IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

DEMETRIUS HILL,                          :
                                         :    Case No. 4:05-CV-1724
                    Plaintiff,           :
                                         :
          v.                             :
                                         :
                                         :
JOSEPH SMITH, Warden,                    :
Lewisburg Pen.,                          :
MR. STRATTA, Associate Warden,  :    (Judge McClure)
LT. HOOPER,                              :
MR. ADAMI, Unit Manager,                 :
JOHN DOE #1, C.O.,                       :
JOHN DOE #2, C.O.,                       :
JOHN DOE, Health Administrator,  :
JOHN DOE, Physician's Assistant,  :
                                         :
                    Defendants.          :

**M E M O R A N D U M**

October 19, 2005

**BACKGROUND:**

    Demetrius Hill, pro se plaintiff in this Bivens action, is incarcerated in the

United States Penitentiary at Lewisburg, Pennsylvania ("USP Lewisburg") while he

awaits sentencing in the Eastern District of New York.[1]  Hill arrived at USP

---

[1] Hill repeatedly refers to himself as a "pretrialer."  (See, e.g., Rec. Doc. No.
2, at 6.)  He also refers to himself as "pretrial prisoner not sentenced."  (Rec. Doc.
No. 1, at 6.)  Upon further investigation into the Eastern District of New York's
electronic docket, the court is aware that a jury found Hill guilty on February 16,

Lewisburg on July 21, 2005, after being transferred from the Metropolitan Detention

Center in Brooklyn, New York ("MDC Brooklyn"), and is housed in the Special

Management Unit, or "G-Block," at Lewisburg.

On or about August 23, 2005, Hill filed a five-count complaint requesting

money damages and equitable relief, complaining of the conditions at the

Penitentiary and the treatment he received there.  (Rec. Doc. No. 1.)  Hill's claims

can be grouped into four categories: physical abuse, indifference to medical

complaints, lack of access to the legal system, and prison conditions in general.

The defendants are employees of USP Lewisburg.

Contemporaneous with the filing of his complaint, Hill filed a motion for a

temporary restraining order and preliminary injunction, accompanied by a

supporting memorandum of law (Rec. Doc. No. 2), a proposed order (Rec. Doc.

No. 4), and a "forma pauperis declaration" (Rec. Doc. No. 5).  Hill sought a

temporary restraining order and preliminary injunction compelling Warden Joseph

Smith to:

> (A) Immediately install cameras in the G-Block stairwells
> and closet area so that there are no blind spots and to

---

2005 as to eleven counts of the superseding indictment in United States v. Hill, No.
2:02-CR-728 (E.D.N.Y.), a case before Judge Denis R. Hurley.  Hill is currently
awaiting sentencing.

prevent repeated assaults and/or killings;

(B) Ensure that all Corrections Officers in G-Block wear name tags;

(C) Allow plaintiff to call his attorney, use the law library, have his legal material in his cell and treat plaintiff as a pretrial detainee until he is sentenced; and

(D) Ventilate G-Block cells and provide plaintiff with an examination by the facility doctor, and sanitize and rid G-Block of excessive cockroaches and mice.

Most troubling to the court were Hill's allegations that he had been assaulted, threatened, and denied essential asthma medications in retaliation for his seeking redress through the administrative grievance and legal systems.

Because the allegations in the complaint were serious, we issued an order dated August 25, 2005 (Rec. Doc. No. 7) scheduling a hearing on Hill's motion for a preliminary injunction for September 8, 2005.[2]  We also directed the Government to file its opposition by the date of the hearing, and temporarily granted Hill's request to proceed in forma pauperis.  (Id.)  However, we denied Hill's motion for

---

[2]In this court's order dated August 25, 2005, we set the hearing for 10 A.M. on September 8, 2005 and directed the U.S. Marshals Service to serve a copy of all the documents filed by Hill upon the named defendants.  However, on September 7, the court learned that the clerk's office had inadvertently failed to provide the Marshals with any documents to serve.  Consequently, service was not effectuated and the hearing was continued until September 22, 2005.  (Rec. Doc. No. 9.)

a temporary restraining order because it did not appear from Hill's affidavit that

immediate and irreparable injury, loss, or damage would result to Hill if we did not

grant the TRO.  See Fed. R. Civ. P. 65(b); (Rec. Doc. No. 7).

On September 15, 2005, the court received correspondence from Hill,

complaining of a delay in receiving asthma medication.  (Rec. Doc. No. 13.)

Attached to the letter were Hill's handwritten request to the Physician's Assistant

assigned to G-Block for the medication and the handwritten affidavit[3] of another

_____

[3]This affidavit, like others submitted by Hill, were considered by the court
for the limited purpose of the motion for a preliminary injunction.  Unsworn
statements are properly considered to have the same force and effect as a sworn
affidavit if the affiant, in his own writing, states "in substantially the following
form:" "I declare (or certify, verify, or state) under penalty of perjury that the
foregoing is true and correct.  Executed on (date)."  28 U.S.C. § 1746(2) (emphasis
added).  Although Hill's affidavit (Rec. Doc. No. 4) and the affidavit of inmate
Watulas (Rec. Doc. No. 14, Ex. E) comply with the requirements of 28 U.S.C. §
1746(2), the affidavits of Hill's other fellow inmates do not.  While one of the
inmates cites 28 U.S.C. § 1746, he did not declare the truth of his statements
"under penalty of perjury."  (See affidavit of inmate Gorham.  (Rec. Doc. No. 13.))
Four other inmate affidavits make no mention of 28 U.S.C. § 1746 and do not
comply with that section.  (See affidavits of inmates Rodriguez, Molina, Alvarez
and Enriquez (Rec. Doc. No. 14, Exs. A-D.))
    Nevertheless, the court made all of the affidavits part of the record for the
limited purpose of Hill's motion for a preliminary injunction.  Because "a
preliminary injunction is customarily granted on the basis of procedures that are
less formal and evidence that is less complete than in a trial on the merits," Kos
Pharmaceuticals, Inc. v. Andrx Corp., 369 F.3d 700, 718 (3d Cir. 2004) (quoting
Univ. of Texas v. Camenisch, 451 U.S. 390, 395 (1981)), "affidavits and other
hearsay materials are often received in preliminary injunction proceedings," Kos
Pharmaceuticals, Inc., 369 F.3d at 718 (citations omitted).  Of course, the court will

inmate averring that USP Lewisburg staff were inattentive to the medical complaints of Hill and the affiant.  On September 19, 2005, the court received a brief and five more inmate affidavits from Hill in support of his motion for a preliminary injunction.  (Rec. Doc. No. 14.)  The Government timely filed its opposition brief on the morning of September 22, 2005.  (Rec. Doc. No. 15.)

On September 22, 2005, we held a hearing on Hill's motion for a preliminary injunction.  Hill represented himself, and testified under oath subject to cross-examination about the allegations in his complaint and his attempts to exhaust administrative remedies.  The Government presented seven witnesses, all of whom were cross-examined by Hill: Warden Joseph Smith, Associate Warden Frank Strada, Unit Manager John Adami, Lieutenant Tracy Hooper, Corrections Officer Wesley Robey, licensed pharmacist and Assistant Health Services Administrator Joseph Zagame, III, and Physician's Assistant/Mid-Level Practitioner Ferdinand Alama.

The court has carefully considered the allegations in the complaint, the supporting briefs and affidavits, the Government's opposition, the testimony of all eight witnesses, and the parties' oral argument.  Based on the following discussion,

---

exercise its discretion in weighing such evidence.  Id. at 719.

we will (1) dismiss the complaint for failure to exhaust administrative remedies and

(2) explain that we would deny Hill's motion for a preliminary injunction even if he

had exhausted his administrative remedies.

## DISCUSSION:

### A.  The plaintiff's complaint is dismissed for failure to exhaust administrative remedies.

"[F]ederal prisoners suing under Bivens v. Six Unknown Fed. Narcotics

Agents, 403 U.S. 388 (1971), must first exhaust inmate grievance procedures"

before filing a claim in federal court.  Porter v. Nussle, 534 U.S. 516, 524 (2002).

The Prisoner Litigation Reform Act of 1995 ("PLRA") provides that "[n]o action

shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any

other Federal law, by a prisoner confined in any jail, prison, or other correctional

facility until such administrative remedies as are available are exhausted."  42

U.S.C. § 1997e(a) (2000).  "[T]he PLRA's exhaustion requirement applies to all

inmate suits about prison life, whether they involve general circumstances or

particular episodes, and whether they allege excessive force or some other wrong."

Porter, 534 U.S. at 532.

The Bureau of Prisons has established a multi-tier Administrative Remedy

6

Program whereby a federal prisoner may seek review of any aspect of his

imprisonment.  See 28 C.F.R. §§ 542.10-542.19.  The program outlines the steps

an inmate must take before fully exhausting his administrative remedies.[4]

Failure to exhaust is an affirmative defense that can be waived if not properly

preserved by a defendant.  Ray v. Kertes, 285 F.3d 287, 295 (3d Cir. 2002).  In

this case, the defendants asserted the defense in their brief opposing Hill's motion

for a preliminary injunction, and presented evidence on the issue at the hearing.

They argue that Hill's complaint and his motion for preliminary injunction are

subject to dismissal for failure to exhaust.[5]  (Rec. Doc. 15, at 6.)

---

[4]The program provides that, with certain exceptions, "an inmate shall first present an issue of concern informally to staff, and staff shall attempt to informally resolve the issue before an inmate submits a Request for Administrative Remedy." 28 C.F.R. § 542.13(a).  Next, if informal resolution fails, the inmate must submit to the warden "a formal written Administrative Remedy Request, on the appropriate form (BP-9)," within 20 "calendar days following the date on which the basis for the Request occurred."  Id. at § 542.14(a).  The Warden has 20 calendar days from the date the Request or Appeal is filed in which to respond.  Id. at § 542.18.

If dissatisfied with the Warden's response, an inmate may appeal on the appropriate form (BP-10) to the Regional Director within 20 calendar days of the date the Warden signed the response.  Id. at § 542.15(a).  If the inmate is not satisfied with the Regional Director's response, that decision may be appealed on the appropriate form (BP-11) to the General Counsel within thirty calendar days from the date the Regional Director signed the response.  Id.  "Appeal to the General Counsel is the final administrative appeal."  Id.

[5]The defendants have not formally moved for a dismissal based on Hill's failure to exhaust administrative remedies; the defendant prison employees had a

We agree.  Despite the litany of grievances Hill presented to this court, the

record reveals that he has attempted to file only one administrative remedy form: a

BP-9 alleging retaliation for filing administrative grievances at MDC Brooklyn and a

denial of medical attention, access to legal materials, and other complaints

associated with USP Lewisburg.  (Def. Ex. 1, at 2.)  This request was denied, and

Hill was instructed to "file a request or appeal at the appropriate level via regular

procedures."  (Def. Ex. 1, at 1.)  Hill did not pursue the appeal with a BP-10, nor

did he file any additional BP-8s or 9s.

---

narrow timeframe in which to mount their defense, because we expedited the
proceedings to accommodate the plaintiff.  Nevertheless, the plaintiffs have argued
the point in their brief and at the preliminary injunction hearing.
     We are aware of the Third Circuit's ruling in Ray v. Kertes, 285 F.3d 287,
297 (3d Cir. 2002), which held that "without further inquiry, the District Court was
not in a position to reach the conclusion that [the inmate] failed to exhaust his
administrative remedies."  In Ray, the District Court dismissed sua sponte the
inmate-plaintiff's complaint for failure to exhaust.  The Third Circuit reversed the
dismissal, holding that it was improper for the District Court to require the inmate
to "demonstrate[] that he has exhausted administrative remedies."  Id.
     This case is distinguishable from Ray.  We have heard all of the evidence to
be presented on the matter of exhaustion.  The defense presented seven witnesses
and five exhibits, the plaintiff testified on his own behalf, and the court considered
all of the affidavits proffered by the plaintiff.  Because we have a fully developed
record, and because the defendants have raised the issue in their pleadings and in
court - giving full opportunity for the plaintiff to respond - we are comfortable
ruling on the issue.
     Our decision is not based on the plaintiff's failure to demonstrate that he has
exhausted his administrative remedies; rather, we turn on the defendants' proffer of
evidence conclusively showing that Hill has not exhausted his remedies.

Furthermore, the defense witnesses all testified that Hill did not informally complain to prison staff about the issues he now presents to the court.  According to the BOP's Administrative Remedy Program, "an inmate shall first present an issue of concern informally to staff, and staff shall attempt to informally resolve the issue before an inmate submits a Request for Administrative Remedy."  28 C.F.R. § 542.13(a).  Warden Smith testified that Hill could have complained to any member of USP Lewisburg staff about the grievances in his complaint: "There are so many people that make rounds, the AW, the unit managers, the shift lieutenant, myself.  He could report it to anybody and we would take a look at it.  If he had reported an assault, I would have at a minimum turned it over to our special investigative administrator."  (Tr. at 43.)  Although Hill testified that he did complain to prison staff, the court finds serious issues with his credibility.

As an excuse for not exhausting his administrative remedies, Hill made three arguments.  First, Hill argued that he was not provided with the appropriate forms to file and appeal administrative grievances.  (See Tr. at 16.)  Specifically, Hill contends that Unit Manager Adami refused to provide him with BP-8s, 9s, and BP-10s.  (Tr. at 24.)  Adami denies this.  (Tr. at 79-80.)  In fact, it was Adami who provided Hill with the sole BP-9 he filed at USP Lewisburg.  (Tr. at 82-83.)

Secondly, Hill seemed to argue that appeals of administrative grievances

9

within the Bureau of Prisons are routinely rejected and therefore futile.  (See Tr. at

36.)  Such a conclusory argument does not present an exception to the mandatory

exhaustion requirement of  42 U.S.C. § 1997e(a).

Finally, Hill argues that the actions of the defendants constitute a waiver of

the exhaustion requirement, because prisoners are subject to retaliation for filing

administrative grievances, and because, Hill claims, there is no independent

oversight over G-Block.  (Tr. at 160-61.)  The Circuits disagree on whether the

mandatory exhaustion requirement of 42 U.S.C. § 1997e is subject to waiver.

Compare Alexander v. Hawk, 159 F.3d 1321, 1326 (11th Cir. 1998) (exhaustion is

mandatory under PLRA, not subject to waiver) with Wendell v. Asher, 162 F.3d

887, 890 (5th Cir. 1998) (exhaustion requirement is "rather like a statute of

limitations, that may be subject to certain defenses such as waiver, estoppel, or

equitable tolling").

The Third Circuit has not ruled on the issue.  See McEachin v. Beard, 136

Fed. Appx. 534, 535 (3d Cir. 2005) (unpublished).  In McEachin, the plaintiff

prisoner argued that the exhaustion provisions of the PLRA "must be equitably

tolled in the case of retaliation claims" because filing repeated grievances would

result in more retaliation.  Id.  This is similar to Hill's argument here.  (See Tr. at

160-61.)  The Third Circuit held in McEachin that "[t]he extraordinary

10

circumstances that would be needed to justify equitable tolling" were not present in that case.  McEachin, 136 Fed. Appx. At 535.  Likewise, even if the mandatory exhaustion provision of 42 U.S.C. § 1997e were subject to waiver, this case presents no "extraordinary circumstances" justifying such a ruling.  Hill's waiver argument must fail.

Because Hill has not exhausted his administrative remedies as required by the PLRA, his complaint and motion for a preliminary injunction will be dismissed.

**B.  The plaintiff's motion for a preliminary injunction would be denied.**

Even had Hill exhausted his administrative remedies, we would deny his motion for a preliminary injunction.

"Preliminary injunctive relief is 'an extraordinary remedy' and 'should be granted only in limited circumstances.'"  KOS Pharmaceuticals, Inc., 369 F.3d at 708 (quoting American Tel. & Tel. Co. v. Winback & Conserve Program, Inc., 42 F.3d 1421, 1427 (3d Cir. 1994)).  The party seeking a preliminary injunction must show (1) a likelihood of success on the merits; (2) that he will suffer irreparable harm if the injunction is denied; (3) that granting preliminary relief will not result in even greater harm to the nonmoving party; and (4) that the public interest favors such relief.  KOS Pharmaceuticals, 369 F.3d at 708 (citing Allegheny Energy, Inc. v. DQE, Inc., 171 F.3d 153, 158 (3d Cir. 1999)).  It is the movant who bears the

11

burden of establishing a right to injunctive relief.  Times Mirror Magazines, Inc. v.

Las Vegas Sports News, L.L.C., 212 F.3d 157, 161 (3d Cir. 2000).

We analyze each of the four factors in turn and conclude that Hill is not

entitled to a preliminary injunction.

1.  Hill has not demonstrated a likelihood of success on the merits.

As mentioned above, Hill's claims can be grouped into four categories:

physical abuse, indifference to medical complaints, lack of access to the legal

system, and prison conditions in general.  On none of these issues has Hill

demonstrated a likelihood of success on the merits.

**Physical abuse.**  Hill has claimed that Correctional Officer Robey assaulted

him in the G-Block stairwell on at least two occasions.[6]  C.O. Robey denies having

ever assaulted Hill.  (Tr. at 111-12.)  The only evidence suggesting that Hill was

assaulted is Hill's own testimony and the affidavit of one of Hill's fellow inmates,

who claims to have heard Hill "call screaming for help and to stop one day coming

back from recreation."  (Rec. Doc. 14, Ex. A.)  No physical evidence supports

_____

[6]In his initial complaint, Hill described two alleged assaults.  (Rec. Doc. 1, at
4.)  In his declaration in support of his motion for a temporary restraining order and
preliminary injunction, Hill declared under penalty of perjury that he was assaulted
"on three (3) seperate [sic] occaision [sic]."  (Rec. Doc. 4-1, at 1.)  At the hearing,
when asked by the Court, "Are you claiming that you were assaulted by an
officer?" Hill replied, "Yes, I was assaulted twice."  (Tr. at 20-21.)

these assertions, however.  Hill claims that he suffered "basically bruises" (Tr. at 21), "basic sore ribs" (Tr. at 32), and was "just sore" (Tr. at 21) as a result of the alleged assaults by C.O. Robey.  Despite acknowledging that the physician's assistant makes rounds every day (Tr. at 21), Hill admitted on cross-examination that he never complained to the physician's assistant about being assaulted.  (Tr. at 30-31).  Mr. Alama, the physician's assistant who makes daily rounds in G-Block, testified that Hill never complained of any pains or bruises.  (Tr. at 149.)  Mr. Alama also testified that in his physical examinations of Hill, he never encountered anything indicating that Hill had been assaulted.  (Id.)  Furthermore, all of the defendants who had contact with Hill testified that Hill never mentioned being assaulted by C.O. Robey.

Hill has presented nothing to corroborate his claim that C.O. Robey assaulted him in the G-Block stairwell and has not shown that he is likely to succeed on the merits of such a claim.

**Deliberate indifference to medical complaints.**  Hill also claims that he has been denied essential asthma medication.  The Supreme Court has established that "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment." Estelle v. Gamble, 429 U.S. 97, 104 (1976).  For Hill's medical claim to succeed,

13

he must demonstrate (1) that the defendants were deliberately indifferent to his

medical needs, and (2) that those needs were serious.  See Rouse v. Plantier, 182

F.3d 192, 197 (3d Cir. 1999) (citing Estelle, 429 U.S. at 104).  While we

acknowledge that asthma can be a severe affliction, Hill has not shown that the staff

of Lewisburg was deliberately indifferent to his asthmatic condition.

Although there may have been a delay in securing the requested medication in

the requested doses, Joseph Zagame, III, Assistant Health Services Administrator

for USP Lewisburg, testified that Hill was in possession of the "appropriate"

medications for his condition.  (Tr. at 129.)  Zagame also testified that should Hill

suffer a full-blown asthma attack, USP Lewisburg provides "24-hour coverage with

paramedics and physicians" who "can handle [that] sort of emergency."  (Id.)

Indeed, when Hill had what he called a "semi-asthma attack" (Tr. at 19), an

unidentified medical staffer brought a nebulizer machine to Hill's cell to give him a

breathing treatment.  (Tr. at 153-54.)

Hill was also examined on a number of occasions by Physician's Assistant

Ferdinand Alama, and each time Alama reported that Hill was in good health,

despite once noting a "faint expiratory wheezing in the right lung."  (Def. Ex. 4, at

6.)

Hill claims that, on the day of the hearing, he had completely run out of

14

medications and had no refills remaining.  (Tr. at 35.)  The defendants disputed that

claim, pointing to the asthma inhaler Mr. Hill had with him in the courtroom.  (Tr.

129-30.)  Hill was scheduled for an appointment to meet with a facility physician the

day after the preliminary injunction hearing.[7]

Hill has not shown that the named defendants, or anyone else at USP

Lewisburg, have been deliberately indifferent to his claimed serious medical needs.

"'Deliberate indifference' . . . requires 'obduracy and wantonness,' which has been

likened to conduct that includes recklessness or a conscious disregard of a serious

risk."  Rouse, 182 F.3d at 197 (quoting Whitley v. Albers, 475 U.S. 312, 319

(1986)).  The Third Circuit has recognized that certain conduct rises to the level of

"deliberate indifference," including where a prison official (1) knows of the

prisoner's need for medical treatment but intentionally refuses to provide it; (2)

delays necessary medical treatment based on a non-medical reason; or (3) prevents

a prisoner from receiving needed or recommended medical treatment.  Rouse, 182

F.3d at 197 (citing Durmer v. O'Carroll, 991 F.2d 64, 68 (3d Cir. 1993) (citing

Monmouth County Correctional Inst. Inmates v. Lanzaro, 834 F.2d 326, 346-47

---

[7]On October 11, 2005, the court received papers from Hill indicating that he saw Dr. Bussanich on September 23, 2005, who prescribed a tapered dose of Prednizone, a new inhaler, and Singulair for Hill's asthma, as well as the antibiotic doxycycline.  (Rec. Doc. 18, at 2.)

(3d Cir. 1987))).  Hill has been seen on a number of occasions by qualified medical staff at the prison, and has received adequate medicines for his condition.  While the medical care that Hill receives at USP Lewisburg may not be everything that he desires, none of the defendants has acted with deliberate indifference to Hill's asthmatic condition.

**Lack of access to the legal system.**  Prisoners have a fundamental constitutional right of access to the courts.  <u>Bounds v. Smith</u>, 430 U.S. 817, 821 (1977) (Marshall, J.).  This access must be meaningful.  <u>See</u> <u>Lewis v. Casey</u>, 518 U.S. 343, 351 (1996) (citing <u>Bounds</u>, 430 U.S. at 823).  To succeed on a claim that he has been denied meaningful access to the courts, Hill must demonstrate that such denial has "hindered his access to pursue a legal claim."  <u>Id.</u>

Although Hill stated that he is involved in numerous pending litigations - including the criminal case that initiated his federal custody - Hill testified that he has not missed any deadlines or court orders since his transfer to USP Lewisburg. (Tr. at 26-27.)  Hill is receiving legal mail from his attorney (Tr. at 27-28), and Unit Manager Adami attempted to contact Hill's attorney for him via telephone.  (Tr. at 74-75.)  Hill has "five legal books and 12 inches" of legal papers in his cell (Tr. at 14-15), and is allowed to exchange those 12 inches upon request (Tr. at 90).  Hill

has obviously been afforded the opportunity to file the present suit with this court.

The testimony does not show that Hill's ability to pursue either his criminal representation or his civil suits has been hindered.  He is not likely to succeed on the merits of such a claim.

**Prison conditions, generally.**  Hill has complained about the conditions of his confinement, including "excessive roaches & mice in these cells" (Rec. Doc. 1, at 5), inadequate ventilation, and high temperatures (Rec. Doc. 4-1, at 2).  Hill has also complained about the absence of cameras from the G-Block stairwell (Rec. Doc. 4-1, at 2), and the failure of prison staff to wear name tags (Rec. Doc. 4-1, at 1).  Finally, Hill complains that he was provided with substandard clothing upon arrival at USP Lewisburg[8] (Rec. Doc. 1, at 3), and that C.O. Robey steals his underwear (Rec. Doc. 1, at 4).

"A prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it."  Farmer v. Brennan, 511 U.S. 825, 847 (1970).  "Whether

---

[8]Hill claims that he was "made to wait a two week period before [he] was given a change of underwear, socks, T-shirt, and they were ripped in the groin area, and the socks had holes in them."  (Rec. Doc. 1, at 3.)

one puts it in terms of duty or deliberate indifference, prison officials who act reasonably cannot be found liable under the Cruel and Unusual Punishments Clause." Id. at 845.

Warden Smith testified that the majority of USP Lewisburg does not have climate control, as he lacks the economic resources to install air conditioners throughout the institution. (Tr. at 45.) Lieutenant Hooper, who is responsible for the daily routines of G-Block, testified that in "the hottest summer that's ever been recorded in central Pennsylvania, I'm sure it's very hot and clammy in one of those cells." (Tr. at 103.)

Among other things, Lieutenant Hooper is responsible for ensuring that inmates receive proper clothing in G-Block. (Tr. at 93-94.) Hooper testified that all inmates receive two jump suits, two towels, three pair of underwear, three socks, and three T-shirts upon arrival in G-Block. (Tr. At 98.) Hooper testified that Hill "never" complained about the condition of his clothing. (Tr. at 99.) Hooper also testified that Hill "never" complained about the condition of his cell, but he did admit that "in a facility that's 77 years old, there could be a mouse in there," and that "there probably could be" cockroaches in the cells. (Tr. at 103.)

These "admittedly uncomfortable conditions . . . do not, by themselves,

articulate a situation that could be fairly characterized as cruel and unusual punishment." Veteto v. Miller, 829 F. Supp. 1486, 1496 (M.D. Pa. 1992) (Conaboy, J.)  As the Supreme Court stated in Rhodes v. Chapman, 452 U.S. 337, 339 (1981), "the Constitution does not mandate comfortable prisons, and prisons . . . which house persons convicted of serious crimes, cannot be free of discomfort."  "To the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." Id. at 347.  Economic constraints prevent the Warden or the Bureau of Prisons from installing climate control in every cell.  The presence of mice and cockroaches does not appear to present a health hazard in this case.  Although Hill suffers discomfort while incarcerated at USP Lewisburg, it cannot be said that he faces a "substantial risk of serious harm" that has been disregarded by prison officials.  See Farmer, 511 U.S. at 847.

Hill has requested that the court order the defendants to install cameras in the G-Block stairwell to prevent assaults in that location.  The court received the in camera and sealed testimony of Warden Smith and is satisfied that the prison is using its limited resources appropriately and that adequate measures have been taken to safeguard the well-being of inmates and the integrity of prison staff.

Hill has also complained that prison staff do not wear name tags.  We heard testimony from the Warden and Lieutenant Hooper that name tags often break or are dislodged during the normal course of the day at USP Lewisburg.  (See, e.g., Tr. at 45-46, 108.)  While we have been unable to locate any Bureau of Prisons policy mandating that prison staff wear name tags or badges at all times, we note that it would be sound correctional practice for officers to wear identification when practicable.

    2.  Hill has not shown that he will suffer irreparable harm if his request for a preliminary injunction is denied.

Among the four factors evaluated on a motion for preliminary injunction, the Third Circuit has "emphasized the elementary principle that a preliminary injunction shall not issue except under a showing of irreparable injury."  Times Mirror Magazines, Inc., 212 F.3d at 161 (citing A.O. Smith Corp. v. FTC, 530 F.2d 515, 525 (3d Cir. 1976)).  "[M]ore than a mere risk of irreparable harm must be demonstrated" before the court will grant a motion for preliminary injunction.  Continental Group, Inc. v. Amoco Chems. Corp., 614 F.2d 351, 359 (3d Cir. 1980) (emphasis added).

The movant must make a "clear showing of immediate irreparable injury," id. (quoting Ammond v. McGahn, 535 F.2d 325, 329 (3d Cir. 1976), or a "presently

20

existing actual threat; an injunction may not be used simply to eliminate a possibility of a remote future injury, or a future invasion of rights," id. (quoting Holiday Inns of America, Inc. v. B & B Corp., 409 F.2d 614, 618 (3d Cir. 1969)).  "The relevant inquiry is whether the movant is in danger of suffering irreparable harm at the time the preliminary injunction is to be issued."  SI Handling Systems, Inc. v. Heisley, 753 F.2d 1244, 1264 (3d Cir. 1985).  The court will not grant preliminary injunctive relief unless "[t]he preliminary injunction [is] the only way of protecting the plaintiff from harm."  Instant Air Freight Co. v. C.F. Air Freight, Inc., 882 F.2d 797, 801 (3d Cir. 1989).

We find that Hill will not be irreparably harmed by our denial of his motion for preliminary injunction.  Hill has not shown a "presently existing actual threat" that he will be assaulted or refused medical care in the future.  The evidence indicates that Hill has access to the courts and the mail, and is permitted to exchange the limited amount of legal materials he maintains in his cell.[9]

_____

[9]On October 11, 2005, the court received papers from Hill complaining that he has "not been allowed to retrieve or retain any legal materials storaged [sic] away" at USP Lewisburg.  (Rec. Doc. 18, at 2.)  Hill appears to refer to the four bags of case law, transcripts, and other court documents that were transferred with him from MDC Brooklyn.  (Tr. at 15.)  The testimony of Unit Manager Adami indicated that Hill is allowed to maintain a limited amount of these legal materials in his cell, consistent with USP Lewisburg policy, and that he may exchange those materials upon request.  (Tr. at 90.)  To the extent Hill complains that he is

<u>3.  The granting of preliminary injunctive relief would result in greater harm to the Government.</u>

Hill has requested that we order the defendants to, <u>inter</u> <u>alia</u>, ventilate his cell, wear name tags, install video cameras in stairwells, and professionally sanitize the cells to expel pests.  Hill is incarcerated in a federal penitentiary with limited financial means.  Ordering the defendants to undertake these actions will result in unnecessary expenditures that are unwarranted by the complaint.

<u>4.  The public interest does not favor the issuance of a preliminary injunction in this case.</u>

The public interest is served by housing inmates in a safe and adequate manner.  The public also has an interest in the way public funds are used in the prison system.  The public interest does not favor the issuance of a preliminary injunction in this case.

## CONCLUSION:

---

forbidden from having the entire universe of his legal papers in his cell, such a complaint is not cognizable so long as Hill is still afforded "meaningful" access to the legal system.  To the extent Hill alleges that he has been denied the opportunity to exchange his limited allotment of legal materials, the issuance of a preliminary injunction is unwarranted because Hill has not demonstrated that such denial has "hindered his access to pursue a legal claim."  <u>Lewis v. Casey</u>, 518 U.S. 343, 351 (1996).

Based on the foregoing, Hill's complaint and motion for a preliminary injunction are dismissed for failure to exhaust administrative remedies.  Even had Hill exhausted his administrative remedies, we would have denied his motion for a preliminary injunction.

  s/ James F. McClure, Jr.
James F. McClure, Jr.
United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DEMETRIUS HILL, | : | |
| | : | Case No. 4:05-CV-1724 |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JOSEPH SMITH, Warden, | : | |
| Lewisburg Pen., | : | |
| MR. STRATTA, Associate Warden, | : | (Judge McClure) |
| LT. HOOPER, | : | |
| MR. ADAMI, Unit Manager, | : | |
| JOHN DOE #1, C.O., | : | |
| JOHN DOE #2, C.O., | : | |
| JOHN DOE, Health Administrator, | : | |
| JOHN DOE, Physician's Assistant, | : | |
| | : | |
| Defendants. | : | |

**O R D E R**

October 19, 2005

For the reasons set forth in the accompanying memorandum,

1

IT IS HEREBY ORDERED THAT:

    1.       The plaintiff's motion for preliminary injunction is DENIED.  (Rec.

                Doc. No. 3.)

    2.       The plaintiff's complaint is DISMISSED for failure to exhaust

                administrative remedies.  (Rec. Doc. No. 1.)

                                              s/ James F. McClure, Jr.
                                            James F. McClure, Jr.
                                          United States District Judge